**UNITED STATES of America,
Appellee,**

v.

**Geoffrey DEMERRITT, Defendant–
Appellant.**

**Docket No. 99–1066**

United States Court of Appeals,
Second Circuit.

Argued Sept. 22, 1999.

Decided Nov. 19, 1999.

of New York, and Cathy Seibel, Assistant United States Attorney for the Southern District of New York, of counsel), for Appellee.

Henriette D. Hoffman, Federal Defender Division Appeals Bureau, Legal Aid Society, New York, NY, for Defendant–Appellant.

Before: OAKES, KEARSE, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

The question presented, as a matter of first impression for this Court, is whether a computer graphics file is an "item" within the meaning of U.S.S.G. § 2G2.4(b)(2), so that a defendant who possesses ten computer files depicting images of child pornography receives a two-level upward enhancement in his base offense level for sentencing purposes. Defendant–Appellant Geoffrey Demerritt appeals from a sentence imposed by the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*) following his plea of guilty to possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). The District Court sentenced Demerritt to 33 months' imprisonment, followed by three years of supervised release; fined him $6000; and imposed a special assessment of $100. On appeal, Demerritt argues that the District Court improperly enhanced his base offense level pursuant to U.S.S.G. § 2G2.4(b)(2) for possessing more than ten "items" of child pornography. We affirm.

## BACKGROUND

Demerritt was arrested on January 22, 1998, following a controlled delivery by the U.S. Customs Service of a videotape containing child pornography. Demerritt had ordered the videotape from a catalogue that he obtained through an Internet web site secretly operated by the Customs Service. At the time of his arrest, Customs

William M. Schrier, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District

agents seized the videotape as well as two computers and "several" pornographic magazines depicting "apparently underage males." Thereafter, agents found approximately 700 computer files depicting child pornography saved on the hard drives of Demerritt's computers.

On August 5, 1998, Demerritt pleaded guilty before Magistrate Judge Lisa Margaret Smith to one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).[1] During his plea allocution, Demerritt acknowledged, *inter alia*, that he had used a computer from October 1996 to January 1998 to "download" from the Internet and otherwise receive images of children in sexually explicit poses.[2]

Following Demerritt's guilty plea, the Probation Office prepared a Pre–Sentence Investigative Report recommending a guideline range of 27 to 33 months' imprisonment. In calculating the applicable range, the Probation Office began with a base offense level of 15 under U.S.S.G. § 2G2.4(a), and made three upward adjustments of two levels each because (1) "the material involved a prepubescent minor or a minor under the age of twelve years," *id.* § 2G2.4(b)(1); (2) "the offense involved possessing ten or more books, magazines, periodicals, films, video tapes, or other items, containing a visual depiction involving the sexual exploitation of a minor," *id.* § 2G2.4(b)(2); and (3) "the defendant's possession of the material resulted from the defendant's use of a computer," *id.* § 2G2.4(b)(3). In addition, the Probation Office adjusted Demerritt's base offense level downward for acceptance of responsibility, and identified his Criminal History Category as I.

Demerritt objected to the two-level enhancement under U.S.S.G. § 2G2.4(b)(2) for possession of ten or more "items[ ] containing" child pornography. Specifically, Demerritt argued that the *computers*, rather than the *computer files*, should be treated as the relevant "items" under § 2G2.4(b)(2) because it would constitute "double counting" to enhance his sentence under both § 2G2.4(b)(2), for possession of more than ten computer files, and § 2G2.4(b)(3), for use of a computer. At sentencing on January 21, 1999, Judge McMahon rejected this contention and, after denying several arguments for downward departure, sentenced Demerritt principally to 33 months' imprisonment. This appeal followed.

### DISCUSSION

The sole issue on this appeal is whether the District Court erred in treating Demerritt's computer files as "items" under U.S.S.G. § 2G2.4(b)(2) and, accordingly, in enhancing his base offense level by two levels. Because this issue involves a purely legal question, we review the District Court's decision *de novo*. *See,*

---

**1.** At the time Demerritt was charged, 18 U.S.C. § 2252(a)(4)(B) provided in relevant part:

> [Any person who] knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, ... by any means including by computer, if—
> (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> (ii) such visual depiction is of such conduct;
> shall be punished....

In 1998, Congress amended the statute to prohibit knowing possession of "1 or more"

books, magazines, etc. containing child pornography. *See* Protection of Children from Sexual Predators Act of 1998, Pub.L. No. 105–314, § 203(a)(1), 112 Stat. 2974, 2978 (codified at 18 U.S.C.A. § 2252(a)(4)(B) (West Supp.1999)). In the same Act, however, Congress established as an affirmative defense to a charge under § 2252(a)(4)(B) that the defendant "possessed less than three matters containing [child pornography]." Protection of Children from Sexual Predators Act, § 203(a)(2), 112 Stat. at 2978 (codified at 18 U.S.C.A. § 2252(c)).

**2.** To download means "[t]o receive a file transmitted over a network," such as the Internet. ALAN FREEDMAN, THE COMPUTER DESKTOP ENCYCLOPEDIA 266 (2d ed.1999).

e.g., United States v. Kirvan, *86 F.3d 309, 311 (2d Cir.1996)*.

■ U.S.S.G. § 2G2.4(b)(2) provides for a two-level enhancement "[i]f the offense involved possessing ten or more books, magazines, periodicals, films, video tapes, or other items, containing a visual depiction involving the sexual exploitation of a minor." Because the Sentencing Guidelines "have the force and effect of law," our interpretation of this provision is guided by basic rules of statutory construction. *Kirvan*, 86 F.3d at 311; *accord United States v. Martinez–Santos*, 184 F.3d 196, 204 (2d Cir.1999). Therefore, we must give "the words used their common meaning, absent a clearly expressed manifestation of contrary intent." *Kirvan*, 86 F.3d at 311 (citing *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)).

Although the question presented is one of first impression for this Court, the Seventh, Eighth, and Ninth Circuits all have held that an individual computer file is an "item" within the meaning of U.S.S.G. § 2G2.4(b)(2). *See United States v. Fellows*, 157 F.3d 1197, 1200–02 (9th Cir. 1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 133, —— L.Ed.2d —— (1999); *United States v. Hall*, 142 F.3d 988, 997–99 (7th Cir.1998); *United States v. Wind*, 128 F.3d 1276, 1278 (8th Cir.1997); *see also United States v. Lake*, 53 F.Supp.2d 771, 781 (D.N.J.1999). In *Fellows*, a panel of the Ninth Circuit reasoned:

> The closest cousin to "books, magazines, periodicals, films, [or] video tapes" in the computer [context] is a computer file. Visual depictions in a computer are compiled and stored in graphics files, much like photographs are compiled and stored in books or magazines.... [T]he computer user can separately view, copy, delete, or transmit each discrete graphics file. Like the other "items"

listed in the guideline section, a graphics file can store one or more visual depictions. The similarities between computer graphics files and the other "items" are manifest.

157 F.3d at 1201. We agree with this analysis. Computer files, like books, magazines, and video tapes, are "discrete containers for visual depictions capable of being separately manipulated and distributed." *Id.* Thus, computer files, and not the disk or disks on which such files are stored, are "items" within the meaning of U.S.S.G. § 2G2.4(b)(2).

The facts of this case demonstrate the soundness of treating computer files as "items" for purposes of U.S.S.G. § 2G2.4(b)(2). As noted, Customs agents discovered approximately 700 discrete computer files depicting child pornography on Demerritt's computers. When he pleaded guilty, Demerritt acknowledged that he had obtained these files over a 15–month period stretching from October 1996 to January 1998. In other words, he downloaded most, if not all, of the files found on his computers in separate transactions over an extended period of time, much as one might purchase individual books or magazines in a series of separate trips to the bookstore. Especially in such circumstances, common sense dictates that the discrete computer files, and not the computer hard drives on which such files are stored, should count as "items" under U.S.S.G. § 2G2.4(b)(2).[3]

■ We are unpersuaded by Demerritt's argument that the term "containing" in U.S.S.G. § 2G2.4(b)(2) requires a different result. Although the term "container" is usually used in reference to a *physical* object, *see, e.g.,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 491 (1976) ("WEBSTER'S"), and a computer "file" is, technically speaking, not a physical object, *see, e.g.,*

---

**3.** Indeed, some of Demerritt's own statements support this common sense conclusion. In addressing the District Court at sentencing, Demerritt stated in relevant part: "To grant that I have continuously on my off hours looked at these *items* I would say is not me." Plainly, he did not use the term "items" in this statement to refer to his computers.

FREEDMAN, *supra,* at 97, 333 (noting that, "[t]o the computer, a file is nothing more than a string of bytes," the common unit of computer storage comprised of binary digits), the word "containing" can also be used to mean "consist[ing] of wholly or in part: COMPRIS[ING], INCLUD[ING]," WEBSTER'S, *supra,* at 491. Defined in this manner, the term "containing" can be used in reference to computer files, as indeed it has been in both legal and nonlegal sources. *See, e.g., United States v. Tagore,* 158 F.3d 1124, 1127 (10th Cir.1998) ("Computer files *containing* ... homemade pornography ... were found on Mr. Tagore's hard drive at the time of his arrest." (emphasis added)); FREEDMAN, *supra,* at 377 (defining "graphics file" as "[a] file that *contains* only graphics data" (emphasis added)); ALAN SIMPSON, MASTERING WORDPERFECT 8, at 498 (2d ed. 1997) ("QuickFinder will search for all files ... that *contain*[ ] the word pattern you entered ...." (emphasis added)); John Markoff, *The Latest Technology Fuels the Oldest of Drives,* N.Y. TIMES, Mar. 22, 1992, § 4 (Week in Review), at 5 ("America Online turned over computer files that *contained* pornographic materials to the F.B.I." (emphasis added)).[4] Furthermore, using the term "containing" in reference to a computer disk, notwithstanding that a disk is a physical object, is no less awkward than using the term in reference to a computer file. Insofar as "containing" is used to mean "hav[ing] within," WEBSTER'S, *supra,* at 491, neither a computer file *nor* a computer disk actually "contains" anything. *See, e.g.,* FREEDMAN, *supra,* at 342 (explaining that computer disks store data magnetically on their surfaces). It is highly doubtful that the Sentencing Commission intended for application of U.S.S.G. § 2G2.4(b)(2) to depend on such technical definitions.

The fact that Demerritt also received an enhancement under U.S.S.G. § 2G2.4(b)(3) for using a computer to commit the charged offense is irrelevant to the meaning of "items" in § 2G2.4(b)(2). Nothing in the Guidelines provision, or in the accompanying Commentary, indicates that the two enhancements are alternative rather than cumulative. *Cf.* U.S.S.G. § 2F1.1, application note 1 (1998) ("The adjustments in § 2F1.1(b)(4) are alternative rather than cumulative."). Moreover, the two provisions, which were enacted pursuant to congressional mandates five years apart, *see* U.S.S.G. app. C, amendments 436 & 537, are motivated by different purposes. Whereas subsection (b)(2) is intended to punish a defendant for the *amount* of child pornography he possesses, subsection (b)(3) is intended to address the particular harms caused by the use of computers in disseminating child pornography. As the House Report on the bill that led to the enactment of subsection (b)(3) explained,

> Distributing child pornography through computers is particularly harmful because it can reach an almost limitless audience. Because of its wide dissemination and instantaneous transmission, computer-assisted trafficking is also more difficult for law enforcement officials to investigate and prosecute. Additionally, the increasing use of computers to transmit child pornography substantially increases the likelihood that this material will be viewed by, and thus harm, children. Finally, the Committee notes with particular concern the fact that pedophiles may use a child's fascination with computer technology as a lure to drag children into sexual relationships. In light of these significant harms, it is essential that those who are caught and convicted for this conduct be punished severely.

H.R. REP. No. 104–90, at 3–4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 759, 760–61.

---

**4.** One need only run a search on Westlaw for "computer files" within one word of the cognate "contain" to see that the latter is commonly used in reference to computer files. Such a search in Westlaw's ALLFEDS database, for example, came up with no fewer than 38 federal cases. Search of Westlaw, ALLFEDS Database (Oct. 26, 1999) (search for "computer-file! /1 contain!").

Crucially, the enhancement in subsection (b)(3) applies irrespective of how many items of pornography a defendant possessed; indeed, Demerritt could have received the enhancement in subsection (b)(3) even if there had been no files on his computer because he used his computer to order the videotape that led to his arrest in the first instance.

 In short, we conclude that, under the plain meaning of U.S.S.G. § 2G2.4(b)(2), computer files are "items" and, therefore, that possession of ten or more computer files containing child pornography triggers a two-level enhancement.[5] We recognize that our interpretation of U.S.S.G. § 2G2.4(b)(2) produces some "incongruities." *United States v. Vig*, 167 F.3d 443, 451 (8th Cir.1999) (Morris Sheppard Arnold, J., dissenting) (discussing the interpretation of "other matter which contain[s] any visual depiction" in 18 U.S.C. § 2252(a)(4)(B)), *cert. denied*, —— U.S. ——, 120 S.Ct. 146, —— L.Ed.2d —— (1999), *and* —— U.S. ——, 120 S.Ct. 314, —— L.Ed.2d —— (1999). For example, under our interpretation of the provision, a defendant who possessed ten computer files containing one proscribed image each would receive the enhancement while a defendant who possessed one file with thousands of images would not. But the Sentencing Commission "ensured such anomalies when it wrote the [Guideline provision] as it did." *Id.* at 451. That is, because the relevant unit of measurement is the "contain[er]," and not the visual depiction itself, a defendant's "storage" of the depictions dictates whether the enhancement applies, regardless of how the term "items" is construed. Thus, a defendant who possessed ten books containing one proscribed image each would receive a different sentence from an otherwise similarly situated defendant who possessed one book with thousands of such images. *See Fellows*, 157 F.3d at 1201; *cf. Vig*, 167 F.3d at 451 (Morris Sheppard Arnold, J., dissenting). Similarly, under Demerritt's interpretation of the provision, a defendant who saved ten computer files with proscribed images on ten different floppy diskettes would receive the enhancement while a defendant who happened to save all ten files on his hard drive would not. U.S.S.G. § 2G2.4(b)(2) may not be a model of draftsmanship, but our role as a court is to apply the provision as written, not as we would write it. *See, e.g., Badaracco v. Commissioner*, 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.").

## CONCLUSION

For the reasons stated above, we conclude that computer files are "items" within the meaning of U.S.S.G. § 2G2.4(b)(2) and that the District Court properly enhanced Demerritt's base offense level for possession of ten or more items of child pornography. Accordingly, the sentence of the District Court is affirmed.

---

**5.** For this reason, we decline Demerritt's invitation to apply to U.S.S.G. § 2G2.4(b)(2) the doctrine of *ejusdem generis,* which "suggest[s] that where general words follow a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated." *Turkette*, 452 U.S. at 581, 101 S.Ct. 2524. As the Supreme Court explained in *Turkette,* "[t]he rule of *ejusdem generis* is no more than an aid to construction and comes into play only when there is some uncertainty as to the meaning of a particular clause in a statute." *Id.*